UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------
UNITED STATES OF AMERICA,

                                                                        **MEMORANDUM & ORDER**
- against -                                                   15-CR-507 (MKB)

ANTOINE KNIGHT,

                                Defendant.
----------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

        Antoine Knight pleaded guilty on June 14, 2024 to violating his conditions of supervised release by committing the crimes of burglary and grand larceny, in violation of New York State Penal Law (the "NYSPL"), and failing to notify the U.S. Probation Office ("Probation") of law enforcement contact. (J., Docket Entry No. 77; Min. Entry dated June 14, 2024.) The same day, the Court sentenced Knight for violating the conditions of his supervised release to twenty-four months in custody, six months of which was imposed to run consecutively to any state court sentence and the remaining eighteen months to run concurrently with any state court sentence, to be followed by one year of supervised release. (J. 3–4.) Knight is currently incarcerated at Atwater USP, with an expected release date of March 9, 2026. *See* Fed. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Aug. 11, 2025).

        On June 1, 2025, Knight filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Def.'s Mot. for Sentence Reduction ("Def.'s Mot."), Docket Entry No. 81; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 83.) On June 10, 2025, the Government opposed Knight's motion. (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 82.) For the reasons set forth below, the Court denies Knight's motion.

**I.  Background**

Knight pleaded guilty on August 25, 2016 to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (Compl., Docket Entry No. 1; Min. Entry dated Aug. 25, 2016.)  On September 7, 2017, the Honorable Roslynn R. Mauskopf sentenced Knight to eighty months of imprisonment, to be followed by three years of supervised release.[1]  (Min. Entry dated Sept. 7, 2017.)  On September 1, 2021, Knight began his supervised release term.  (Violation of Supervised Release Report ("VOSR Report") 1, Docket Entry No. 67.)  Knight subsequently committed several violations of the terms of his supervised release.  (*See generally id.*)

On or about December 23, 2022, Knight committed burglary and grand larceny in violation of the NYSPL and subsequently pleaded guilty to these charges in the Supreme Court of New York, New York County.  (VOSR Report 5–6; Tr. of VOSR Hr'g ("VOSR Tr.") 9:19–21, annexed to Def.s Mot. as Ex. A, Docket Entry No. 81-1; Gov't Opp'n 2.)  On or about April 15, 2023, May 6, 2023, and July 6, 2023, Knight committed grand larceny in violation of the NYSPL and subsequently pleaded guilty to these charges in the Supreme Court of New York, Kings County.  (VOSR Report 6–7, 9–11; VOSR Tr. 9:23–10:10; Gov't Opp'n 2.)  According to Knight, he pleaded guilty to burglary and grand larceny in these state court cases "with the understanding that he would receive sentences of two to four years in his [Manhattan and Brooklyn] cases, concurrent to each other and concurrent to the sentence imposed for his violations of supervised release" in federal court.  (Def.'s Mot. 4; VOSR Tr. 23:20–24:10.)

On December 20, 2023, Probation filed a VOSR Report that charged Knight with violating the conditions of his supervised release by committing several state crimes.  (*See*

---

[1] The case was reassigned to the undersigned on April 7, 2022.  (Order Reassigning Case dated Apr. 7, 2022.)

*generally* VOSR Report.)  The VOSR also charged that on June 27, 2023, and September 14, 2023, Knight violated his conditions of supervised release by failing to notify Probation within seventy-two hours of contact with the New York City Police Department ("NYPD").  (*Id.* at 8–10.)  On June 14, 2024, the Court sentenced Knight to twenty-four months in custody, six months of which was imposed to run consecutively to any state court sentence and the remaining eighteen months to run concurrently with any state court sentence, to be followed by one year of supervised release.  (J. 3–4.)

On June 26, 2024, the NYPD arrested Knight "and charged [him] with several theft related crimes, resisting arrest, and escape."  (Letter dated June 28, 2024 1, Docket Entry No. 78; Gov't Opp'n 3.)  Knight "stole merchandise from a store," "tried to flee when confronted by store employees," and escaped from the back of a police car after the NYPD arrested him.  (Letter dated June 28, 2024 1.)

After Knight's June 26, 2024 arrest, Knight was sentenced in state court.  (VOSR Tr. 14:17–23; Def.'s Reply 3 (noting that Knight "had still not been sentenced in state court as of June 26, 2024").)  In the Supreme Court of New York, New York County, Knight received a concurrent sentence of two to four years.  (Def.'s Mot. 2.)  In the Supreme Court of New York, Kings County, the Honorable Justice Christopher Robles sentenced Knight to two to four years concurrent to his state charges in New York County and consecutive to this Court's sentence for Knight's supervised release violations.  (Tr. of Sent'g Hr'g ("Sent'g Hr'g") 6:11–15, annexed to Def.'s Mot. as Ex. B, Docket Entry No. 81-2.)  At Knight's Kings County sentencing, Justice Robles noted that Knight was "rearrested [sixteen] days after pleading guilty on the[] three [grand larceny] matters for really almost identical facts and circumstances . . . ."  (*Id.* at 5:8–10.)

On June 1, 2025, Knight filed a motion for a reduction in sentence.  (Def.'s Mot.; Def.'s Reply.)  Knight argues that he has exhausted his administrated remedies, has established

3

extraordinary and compelling circumstances justifying compassionate release, and also argues that the section 3553(a) factors support his release. (Def.'s Mot. 2–12.) The Government opposes Knight's motion, arguing that Knight has not exhausted his administrative remedies, failed to demonstrate extraordinary and compelling circumstances for his release, and that the section 3553(a) factors weigh against a reduction of Knight's sentence. (Gov't Opp'n 3–10.)

## II. Discussion

### a. Standard of review

"[O]ther than the limited exceptions provided by statutes . . . courts are not free to modify sentences at will." *United States v. Martin*, 974 F.3d 124, 135 (2d Cir. 2020); *United States v. Boyle*, No. 03-CR-970, 2024 WL 4836339, at *2 (E.D.N.Y. Nov. 20, 2024) ("A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." (quoting *United States v. Applewhite*, No. 17-CR-142, 2020 WL 7356615, at *3 (E.D.N.Y. Dec. 15, 2020))). "A district court may, in an exercise of its discretion, reduce an inmate's term of imprisonment by granting a motion brought under 18 U.S.C. § 3582(c)(1)(A) — the 'compassionate release' provision . . . ." *United States v. Van Der End*, No. 21-2079, 2023 WL 193633, at *1 (2d Cir. Jan. 17, 2023). "[T]here are three requirements that must be satisfied before a court can grant such relief" — namely, (1) "absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities"; (2) "a court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable'"; and (3) "the inmate must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also,*

4

*e.g.*, *United States v. Pimentel*, No. 23-7096, 2025 WL 783730, at *2 (2d Cir. Mar. 12, 2025) (quoting *Keitt*, 21 F.4th at 73); *United States v. Isaac*, No. 22-2758, 2024 WL 1597614, at *2 (2d Cir. Apr. 12, 2024) (similar); *United States v. Barnett*, No. 21-2319, 2023 WL 2375684, at *1 (2d Cir. Mar. 7, 2023) (same); *United States v. Fox*, No. 22-10-CR, 2023 WL 379539, at *1 (2d Cir. Jan. 25, 2023) (same) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *United States v. Davis*, No. 21-716, 2022 WL 1320316, at *2 (2d Cir. May 3, 2022) (citing *Keitt*, 21 F.4th at 71); *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam); *United States v. Cummings*, No. 20-3156, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021); *United States v. DiBiase*, 857 F. App'x 688, 688–89 (2d Cir. 2021); *United States v. Fernandez*, 853 F. App'x 730, 731–32 (2d Cir. 2021); and *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020).

If a defendant cannot satisfy the applicable section 3553(a) sentencing factors, a district court "need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *Pimentel*, 2025 WL 783730, at *2 (quoting *Keitt*, 21 F.4th at 73); *United States v. Mayes*, No. 23-6077, 2024 WL 2990909, at *2 (2d. Cir. June 14, 2024) (same); *United States v. Wofford*, No. 22-2811, 2024 WL 1298468, at *2 (2d Cir. Mar. 27, 2024) (same); *Van Der End*, 2023 WL 193633, at *1 (same); *see Jones*, 17 F.4th at 374 (noting that because "extraordinary and compelling reasons are necessary — but not sufficient — for a defendant to obtain relief . . . , panels of this [c]ourt have, in non-precedential summary orders, assumed the[ir] existence . . . but held that a district court's 'reasonable evaluation of the [applicable] [s]ection 3553(a) factors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021))).

5

### b. Administrative exhaustion

Knight argues that he has exhausted his administrative remedies. (Def.'s Mot. 7.) On March 30, 2025, Knight requested a review of his compassionate release through email and service to the Warden of USP Pollock, where Knight was housed at the time. (*Id.*; Email dated Mar. 30, 2025, annexed to Def.'s Mot. as Ex. C, Docket Entry No. 81-3; Def.'s Reply 1.) Staff at USP Pollock acknowledged receipt of Knight's email. (Def.'s Reply 1; Email dated Mar. 31, 2025, annexed to Def.'s Reply as Ex. D, Docket Entry No. 83-1.) Neither Knight nor his counsel received a response from the Warden of USP Pollock regarding his request for compassionate release. (Def.'s Mot. 7.)

The Government contends that Knight has not exhausted his administrative remedies because the Bureau of Prisons ("BOP") had not received Knight's letter as of June 6, 2025. (Gov't Opp'n 5–6.)

Section 3582(c) permits a defendant to file a motion for compassionate release after "the defendant has fully exhausted all administrative rights . . . *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020) (holding that section 3582(c)(1)(A) "requires the defendant *either* to exhaust administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court."); *see also United States v. Monsalvatge*, No. 12-CR-586, 2025 WL 307137, at *4 (E.D.N.Y. Jan. 27, 2025) ("That is, the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (i.e., the BOP) before bringing his petition to court. Rather, it requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." (quoting *Haney*, 454 F. Supp. 3d at 321)). *Cf. United States v. Rounds*, No. 21-2686,

6

2022 WL 17684589, at *1 (2d Cir. Dec. 15, 2022) (holding that to satisfy section 3582(c)(1)(A), a "defendant must fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or 30 days must lapse "from the receipt of such a request by the warden of the defendant's facility") (alterations omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)); *United States v. Reid*, No. 05-CR-5961, 2021 WL 837321, at *4 (E.D.N.Y. Mar. 5, 2021) (same).

Knight, through counsel, submitted his letter requesting review of his compassionate release on March 30, 2025, (Email dated Mar. 30, 2025), and filed a motion for compassionate release with the Court sixty-three days later on June 1, 2025, (Def.'s Mot.). Knight's motion was thus timely filed more than thirty days after Knight submitted his request through electronic mail to the Warden. *See United States v. Loyd*, No. 16-CR-13, 2025 WL 1111564, at *2 (W.D.N.Y. Apr. 15, 2025) (considering the merits of the defendant's compassionate release motion where defendant "include[d] a copy of an email request to the warden at the BOP facility where [he was] housed" and "had . . . not received a response from the [w]arden regarding his request" more than thirty days later); *United States v. Colon-Cruz*, No. 19-CR-911, 2024 WL 2786781, at *1 (S.D.N.Y. May 28, 2024) (concluding that a defendant satisfied the administrative exhaustion requirement because "[m]ore than 30 days lapsed from the date of [the defendant's] administrative application to the filing of his [compassionate release] motion"); *United States v. Alamo*, 588 F. Supp. 3d 300, 303 (E.D.N.Y. 2022) (holding that a defendant had standing to bring a motion for compassionate release because more than thirty days had passed since he asked the warden of his facility to review his request for compassionate release); *Reid*, 2021 WL 837321, at *5 (holding that the defendant "satisfied the exhaustion requirement because more than thirty days have lapsed since his renewed request" for compassionate release); *United States v. Day*, 473 F. Supp. 3d 209, 214 (W.D.N.Y. 2020) (finding that an email sent to the warden was

7

sufficient to satisfy the administrative exhaustion requirement where more than thirty days had lapsed).

The Court notes that district courts in the Second Circuit have diverged in their interpretations of the provision allowing a defendant to move for compassionate release "after . . . the lapse of 30 days from the receipt of such a request by the warden." 18 U.S.C. § 3582(c)(1)(A); *United States v. Saladino*, 7 F.4th 120, 123–24 (2d Cir. 2021) (recognizing without resolving the split among the district courts); *see also United States v. Bello*, No. 13-CR-559, 2024 WL 2962169, at *4 (E.D.N.Y. June 12, 2024) ("District courts in this Circuit have disagreed as to whether the administrative exhaustion is met in these circumstances." (quoting *Saladino*, 7 F.4th at 123–24)). Knight has exhausted his administrative remedies because more than thirty days have passed since he submitted his March 30 request for review of his compassionate release, and the Warden of USP Pollock has not responded.[2]

c. **Knight has not demonstrated extraordinary and compelling circumstances**

Knight argues that he has presented extraordinary and compelling circumstances in support of his motion for compassionate release because reducing his federal sentence would

---

[2] Some district courts have concluded that the statute authorizes a defendant to file a motion regardless of whether the warden responds to the defendant's request, while other district courts have found that the thirty-day waiting period applies only when the BOP does not respond to the request. *Compare United States v. Lajaward*, No. 15-CR-235, 2023 WL 5970962, at *2 n.1 (S.D.N.Y. Sept. 14, 2023) (holding that the thirty-day "waiting period authorizes the defendant to file a motion regardless of whether the warden responds to the defendant's request for compassionate release") *with United States v. Morales*, No. 12-CR-322-9, 2023 WL 4764054, at *2 (S.D.N.Y. July 26, 2023) (holding that a defendant had not exhausted her administrative remedies because she did not allege that she appealed the warden's denial of her request for compassionate release); *United States v. Samuels*, No. 08-CR-789, 2020 WL 7696004, at *3 (S.D.N.Y. Dec. 28, 2020) (holding that after a warden timely denies a defendant's request for compassionate release, the defendant must exhaust further administrative rights to appeal, including to the BOP Regional Director and the BOP General Counsel); *and United States v. Kissi*, 469 F. Supp. 3d 21, 32 (E.D.N.Y. 2020) (concluding that defendants must appeal the BOP's timely denial of a request for review of compassionate release to satisfy section 3582(c)(1)(A)'s exhaustion requirement).

match the Court's original intent for his term of imprisonment.  (Def.'s Mot. 7.)  Knight contends that courts have granted compassionate where there is a "mismatch between the intent of sentencing and the actual sentence."  (*Id.*)

The Government argues that Knight has not presented extraordinary and compelling circumstances warranting a reduction to his sentence to time served because he "incorrectly claims that a reduction in sentence is necessary to honor the original intention of this Court." (Gov't Opp'n 6.)  In support, the Government argues that the Court "[was] under the impression that in a matter of days [Knight] would be remanded into state custody to begin serving a prison sentence" and "was deprived of the ability to address the change of circumstances" — namely, the "adjournment of [Knight's] sentencing" in state court and the fact that "[he] was then arrested for another state offense involving theft and resisting arrest."  (*Id.*)  The Government also argues that "this case is unlike any referenced in [Knight's] motion."  (*Id.*)

Pursuant to section 3582(c)(1)(A)(i), "a district court 'may reduce' the term of a defendant's imprisonment 'if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'"  *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A));  *see also United States v. Coonan,* 143 F.4th 119, 122 (2d Cir. 2025) (explaining that a court may reduce the defendant's term of imprisonment "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" (alteration in original) (quoting § 3582(c)(1)(A)(i)));  *United States v. Fernandez*, 853 F. App'x 730, 732 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).  "In our American system of dual sovereignty, each sovereign — whether the Federal Government or a State — is responsible for the administration of its own criminal justice system."  *United States v. McIntosh*, 753 F.3d 388, 395 (2d Cir. 2014) (quoting *Setser v. United States,* 566 U.S. 231, 241 (2012)); *Setser,* 566 U.S. at

9

241 (quoting *Oregon v. Ice*, 555 U.S. 160, 170 (2009)). Accordingly, where the defendant serves his federal sentence first, "the [s]tate will decide whether to give [the defendant] credit against his state sentences without being bound by what the district court . . . said on the matter . . . ." *United States v. McIntosh*, 753 F.3d 388, 395 (2d Cir. 2014) (quoting *Setser,* 566 U.S. at 241)).

Knight's consecutive state court sentence does not present extraordinary and compelling circumstances warranting a reduction in his sentence and his immediate release from federal custody. In sentencing Knight on the Kings County crime, Justice Robles noted that Knight was "rearrested [sixteen] days after pleading guilty" in Kings County Criminal Court for "almost identical facts and circumstances." (Sent'g Tr. 5:4–11.) Justice Robles explained that, even though Knight had "giv[en] him cause to enhance [Knight's] sentence by many, many years" by "picking up a new case," he would "sentence [Knight] as promised." (*Id.* at 12:2–4, 12:10.) Justice Robles further explained that "[t]he context of running federal with state" was not negotiated at the time of the plea and that "[a]ny opportunity for that to happen" ended "when [Knight] picked up the other case." (*Id.* at 10:21–11:4.) Thus, Knight was sentenced to consecutive terms of imprisonment in view of the additional new charges resulting from Knight's criminal conduct subsequent to this Court's sentence on his supervised release violations. In view of Justice Robles' imposition of consecutive sentences and Knight's additional offenses for similar conduct, the Court finds that Knight has not shown extraordinary and compelling circumstances justifying his compassionate release application. *See Setser,* 566 U.S. at 241 (explaining that, where a defendant "serves his federal sentence first, the [s]tate will decide whether to give him credit against his state sentences without being bound by what the district court or the [BOP] said on the matter"); *United States v. Rivera-Santiago,* 834 F. App'x 630, 633–34 (2d Cir. 2020) ("[T]he [Supreme] Court's holding in *Setser* was based on a recognition of courts' longstanding discretion to impose a sentence to 'run concurrently or

10

consecutively with respect to other sentences . . . including state proceedings' and to abide by 'principles of federalism.'" (quoting *Setser,* 566 U.S. at 236–37)); *United States v. Campell,* No. 14-CR-231, 2024 WL 1521311, at *1 (S.D.N.Y. Apr. 5, 2024) (finding "a recommendation that [the defendant's] federal sentence be retroactively designated as concurrent to his state sentence to be appropriate" in part because it "respects the integrity of the [s]tate [c]ourt's sentence which . . . took into account the already-imposed federal sentence" (second, third, and fourth alterations in original) (citation omitted)); *United States v. Robinson*, 2024 WL 4504694, at *3 (finding that the defendant's federal sentence should run consecutively to his state sentence, even though the district court "[was] not bound by the [s]tate court's decision," and noting that "the [s]tate court ordered that [the defendant's] sentences should run consecutively" based on its "full knowledge of [the defendant's] federal and state offenses"); *Hall v. Lavalley*, 982 N.Y.S.2d 598, 599 (2014) (finding that the defendant was entitled to credit against his state sentence "for the approximately [twenty] months spent in federal prison" because "it [was] clear that *both* sovereigns intended the state and federal sentences to run concurrently").

Knight relies on *United States v. Lopez*, *United States v. Eccleston*, and *United States v. Jackson* to argue that he has presented extraordinary and compelling reasons warranting his immediate release from federal custody. (Def.'s Mot. 7–9 (first citing *United States v. Lopez,* 534 F. Supp. 3d 573 (E.D. Va. 2021); then citing *United States v. Eccleston*, 543 F. Supp. 3d 1092 (D.N.M. 2021); and then citing *United States v. Jackson*, No. 21-CR-537, 2024 WL 4826466 (S.D.N.Y. Nov. 19, 2024))). However, Knights reliance on these cases is misplaced. First, in *Lopez*, the district court found that there were "extraordinary and compelling circumstances" warranting a sentence reduction because the state department of correction's "insistence on consecutive sentences" was "directly contrary to the express order of the sentencing judge" and a consecutive sentence was "greater than necessary to achieve the goals of

sentencing." *Lopez,* 534 F. Supp. 3d at 578–79.  Unlike the state department of correction's "refus[al] to honor [the district judge's] [o]rder" regarding the defendant's sentence in *Lopez*, denying Knight's sentence reduction motion honors Justice Robles' express order regarding his sentence.  *Id.* at 575.  Second, in *Eccleston*, the district court found that there were extraordinary and compelling reasons warranting a sentence reduction in part because the defendant reasonably believed, based on his plea agreement and advice from his lawyer and state court judge, that his state and federal sentences would run concurrently.  *Eccleston*, 543 F. Supp. 3d at 1039.  As Knight acknowledges, "Knight's case is not one rooted in the reasonable confusion present in *Eccleston*."  (Def.'s Mot. 8.)  Further, unlike the text of the plea agreement and advice from the defendant's state court judge in *Eccleston*, Justice Robles explained that "[t]he context of running federal with state" was not negotiated at the time of the plea.  (Sent'g Tr. 10:21–24).  Lastly, in *Jackson*, the district court granted the defendant's request for a sentence reduction because the state court's sentence, which "foreclosed" the district court's recommendations that the defendant "be afforded the opportunity to participate in the BOP's Residential Drug Abuse Treatment Program" and be housed near his family, made the federal sentence more punitive than intended.  *Jackson*, 2024 WL 4826466, at *3–4.  Unlike the district court's recommendations in *Jackson*, this Court's recommendation that Knight "be designated to a facility near the New York Tri-State area" does not appear to be foreclosed by the state court's sentence.  (J. 3.)

Accordingly, because Knight has not shown extraordinary and compelling reasons, the Court denies his motion for compassionate release.

    **d.  The section 3553(a) factors do not favor release**

In addition to failing to show extraordinary and compelling circumstances in support of his request for a reduction of his sentence and his immediate release, Knight has not shown that

12

the section 3553(a) factors favor his release. Knight argues the section 3553(a) factors support his release because (1) a sentence reduction would avoid unwarranted sentencing disparities, (2) "[his] release from federal custody presents no threat to the public," and (3) denying compassionate release would be more punitive than necessary to promote respect for the law, reflect the serious nature of the offense, or provide a fair and just punishment. (Def.'s Mot. 9–11.) In support, Knight argues that his "expect[ed] [sentence of] four to six years total of incarceration . . . . significantly differs from the original opinion of the Court on the appropriate length of the aggregate sentence." (*Id.* at 11.)

The Government argues the section 3553(a) factors "weigh heavily against" compassionate release because Knight has a "lengthy criminal history and record of noncompliance with Probation's directives." (Gov't Mot. 9.) In support, the Government argues Knight "is a serial larcenist who has committed at least four separate state felonies since his release from federal custody for illegally possessing two firearms" and "repeatedly failed to comply with the terms of supervision." (*Id.* at 8.) The Government contends that continued custody is necessary to "align with [s]ection 3553(a)'s demand that a sentence promote respect for the law," account for specific deterrence, and "to guard against continued criminal conduct." (*Id.* at 9.)

At sentencing on the VOSR, the Court considered Knight's "extensive criminal record" and the fact that Knight "in a three-month period, . . . committed several crimes" underlying his supervised release violations, as well as his expected "sentences in both [Manhattan and Brooklyn]." (VOSR Tr. 23:3–24:2.) These factors, which the Court considered at sentencing, do not now warrant Knight's immediate release. As the Court noted at sentencing, Knight committed several crimes "very soon after each other in April and then again in May and then in July," and Knight's "categoriz[ation] as a career criminal." (*Id.* at 23:10–11, 23:15.) After

13

balancing these facts, the Court sentenced Knight to a total of twenty-four months of imprisonment for violating the terms of his supervised release, concluding that such a sentence would adequately deter Knight from future crime, protect the public from his conduct, and account for the nature and circumstances of his offenses.[3]  (*Id.* at 20:16–19, 23:20–22, 24:6–10.)  The Court's sentence was based on many of the same considerations Knight raises in his motion for compassionate release.  (*Id.* at 23:10–24:10.)  Knight's immediate release from federal custody would not reflect "the nature and circumstances of the offense and the history and characteristics of [Knight]," "afford adequate deterrence to criminal conduct," or "protect the public from further crimes of [Knight]."  18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C); *United*

---

[3]  Relying on *Esteras v. United States*, 606 U.S. ---, ---, 145 S. Ct. 2031, 2037 (2025), Knight argues that "the Court relied on now-impermissible factors in revoking [his] supervised release" — namely, "the 'serious' additional crimes underlying [his] supervised release violations."  (Def.'s Reply 3–4.)  In *Esteras*, the Supreme Court held that, in revoking a defendant's supervised release term and requiring reimprisonment, district courts may only consider the factors enumerated in section 3583(e).  *Esteras*, 606 U.S. ---, ---, 145 S. Ct. at 2037 (citing 18 U.S.C. § 3583(e)).  In requiring Knight's reimprisonment, the Court noted the seriousness of Knight's offenses, but primarily relied on "the nature and circumstances of [his] offense," "[his] history," the "need to provide adequate deterrence to [him]," and the "need to protect the public from [his] conduct," (*id.* at 23:5–6, 23:13, 23:21–22) — all factors that the Supreme Court has found permissible for district courts to consider pursuant to section 3583(e).  *See Esteras*, 606 U.S. ---, ---, 145 S. Ct. at 2037 ("[A] court may [revoke supervised release and require reimprisonment] only 'after considering' an enumerated list of sentencing factors: those 'set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).'  Conspicuously missing from this list is § 3553(a)(2)(A), which directs a district court to consider 'the need for the sentence imposed' 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" (citation omitted)); *see also United States v. O'Sullivan*, No. 20-CR-272, 2025 WL 2073993, at *2 (E.D.N.Y. July 23, 2025) (explaining that while "the Supreme Court's recent decision [in *Esteras*] confirms that the [c]ourt may not consider the seriousness of the crimes committed by [the] [d]efendant . . . in deciding whether to grant early termination of his supervised release," "the [c]ourt is still allowed to consider the nature and circumstances of the offense committed by [the] [d]efendant"); *United States v. Reynoso*, No. 24-214, 2025 WL 1793410, at *3 n.1 (2d Cir. June 30, 2025) (explaining that the Second Circuit "would still affirm the judgment of the district court on plain-error review because it is not 'clear or obvious that the district court actually relied on [18 U.S.C.] § 3553(a)(2)(A)' in determining his revocation sentence" (alterations in original) (citations omitted)).

*States v. Taylor*, No. 20-2473, 2021 WL 4519849, at *2 (2d Cir. Oct. 4, 2021) (finding that the district court did not abuse its discretion by imposing a twenty-four-month prison term for the defendant's supervised release violations where the district court weighed the defendant's breach of trust, "repetition of the same conduct that resulted in his prior revocation, and the need to 'protect the community from [the defendant's] further criminal behavior'" (citation omitted)); *United States v. Stevenson*, 601 F. App'x 24, 27–28 (2d Cir. 2015) (finding that a sentence of fifty-six months' imprisonment was not substantively unreasonable for the defendant's supervised release violations because "[the defendant's] conduct demonstrated that supervision was inadequate as a deterrent" where the defendant "was in jail for a pretty good period of time" and "[was] back doing what he was doing before").

Accordingly, because section 3553(a) factors do not favor release, the Court denies Knight's motion.

### III. Conclusion

For the foregoing reasons, the Court denies Knight's motion for compassionate release.

Dated: August 11, 2025
       Brooklyn, New York

                                SO ORDERED:

                                _____s/ MKB_____
                                MARGO K. BRODIE
                                United States District Judge